[Cite as *In re J.H.*, 2019-Ohio-1107.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| IN THE MATTER OF:<br><br>J.H. and A.H., Jr. | JUDGES:<br>Hon. William B. Hoffman, P.J<br>Hon. John W. Wise, J.<br>Hon. Patricia A. Delaney, Jr., J.<br><br>Case Nos. 2018CA00137 &<br>2018CA00138<br><br>O P I N IO N |

| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Appeal from the Stark County Court of<br>Common Pleas, Family Court Division,<br>Case No. 2017JCV1346 & 2017JCV1347 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | March 26, 2019 |

APPEARANCES:

| For Appellant | For Appellee |
|---|---|
| DONOVAN R. HILL<br>116 Cleveland Av., NW – Suite 808<br>Canton, Ohio 44702 | CHRIS EOFF<br>Department of Jobs and Family Services<br>221 – 3rd Street, S.W.<br>Canton, Ohio 44702 |
| Guardian Ad Litem | Legal Guardians |
| CHRISTINE GUARDADO<br>4600 Beverly Ave., N.E.<br>Canton, Ohio 44714 | RUSSELL & MARYBELLE SMITH<br>3655 Easton Street, N.E.<br>North Canton, Ohio 44721 |

*Hoffman, P.J.*

**{¶1}** In Stark App. No. 2018CA00137, Appellant Amanda Powell ("Mother") appeals the August 17, 2018 Judgment Entry entered by the Stark County Court of Common Pleas, Family Court Division, which approved and adopted the magistrate's June 22, 2018 decision granting legal custody of her minor child ("Child 1") to Marybelle and Russell Smith, the child's maternal step-great grandparents ("the Smiths"). In Stark App. No. 2018CA00138, Mother appeals a second August 17, 2018 Judgment Entry which also approved and adopted the magistrate's June 22, 2018 decision granting legal custody of her other minor child ("Child 2") to the Smiths. Appellee is Stark County Job and Family Services ("SCJFS").

STATEMENT OF THE CASE AND FACTS

**{¶2}** Mother and Adam Hunt ("Father")[1] are the biological parents of Child 1 and Child 2. On November 3, 2017, SCJFS filed complaints, alleging Child 1 and Child 2 were dependent and/or neglected children. The trial court placed Child 1 and Child 2 in the emergency shelter care custody of SCJFS on November 7, 2017. Following an adjudicatory hearing on January 25, 2018, the trial court found both children to be neglected and placed them in the temporary custody of SCJFS. Mother did not appear at the adjudicatory hearing.

**{¶3}** On March 1, 2018, SCJFS filed motions to change legal custody of Child 1 and Child 2 to the Smiths. The trial court conducted a hearing on SCJFS's motions to change legal custody on June 14, 2018. Counsel for Mother requested a continuance of the hearing as Mother was in Michigan and was unable to return to Ohio in time for the

---

[1] Father is not a party to this Appeal. He was, and remains, incarcerated throughout the course of the proceedings.

hearing.  Counsel for SCJFS advised the trial court Mother met with SCJFS caseworker Paige Horn the previous morning, June 13, 2018, and Horn reminded Mother about the hearing the following day.  The trial court denied the request and proceeded with the hearing.

{¶4}  Paige Horn testified the Agency originally became involved with the family due to concerns about the conditions of the home, the children's failure to regularly attend school, Mother's failure to ensure Child 2 took his medication as prescribed, the lack of food in the home, physical abuse, and Mother's substance abuse.  Mother's case plan required her to complete a parenting evaluation at Northeast Ohio Behavioral Health. Despite the fact the case was opened in November, 2017, Mother did not complete her first parenting evaluation until May 8, 2018.  Thereafter, Mother delayed setting up her first appointment with Dr. Thomas.  The appointment was finally scheduled for June 19, 2018, five days after the hearing.  Mother's case plan also required her to undergo a drug and alcohol assessment through ComQuest.  Mother completed the assessment on February 14, 2018, but she failed to follow through with treatment and services until shortly before the change of custody hearing, attending one session on June 1, 2018.

{¶5}  All of Mother's drug screens conducted at ComQuest were positive for marijuana with two of the screens also positive for alcohol.  At the time, Mother was pumping her breastmilk and freezing it for her newborn.  Mother explained to Horn the alcohol helped her produce more breastmilk.  Horn screened Mother at the Agency on April 27, and May 16, 2018.  Mother's tests were negative for all substances.  Subsequent screens conducted at ComQuest were positive for marijuana.

{¶6}  Horn recalled Mother appeared at the Agency on February 5, 2018, and

advised her she (Mother) was fearful of Milan Trumbull, the man with whom she was living. Mother indicated Trumbull was verbally abusive, extremely demanding, and controlling. Mother added the home in which she was living had had no water or electricity for over a month. Horn and another SCJFS worker spent approximately three hours with Mother. They were able to get Mother into a domestic violence shelter in Alliance, Ohio. Mother left the shelter after a short time and returned to Trumbull's home.

{¶7} Although SCJFS removed the children on November 3, 2017, Mother's first visit with them was on March 13, 2018. Between March 13, and June14, 2018, Mother attended fewer than ten visits with the children, and often cancelled visitation. At the visits, Mother focused all of her attention on Child 1. Child 2 would have to call Mother's name multiple times before she responded to him. Mother was unable to provide care for both children at the same time. The children have had two sibling visits with Mother and the newborn. During those visits, Mother focused solely on the baby. Child 2 played on Mother's phone throughout the visits.

{¶8} Horn testified the children are currently placed with the Smiths, their maternal step-great grandparents. Prior to placement with the Smiths, Child 2 was having difficulty in school. He would often get in trouble and have to be removed from his classroom. Child 2's school attendance and behavior have improved substantially since being placed with the Smiths. Likewise, Child 1 was having behavior problems at school and repeatedly had to be removed from her classroom. She has made "phenomenal progress" since being placed with the Smiths. Both children are doing well academically and are involved in extra-curricular activities. Horn opined it was in the best interest of the children to place them in the legal custody of the Smiths.

**{¶9}** The magistrate issued decisions relative to both children on June 22, 2018. The magistrate found SCJFS made reasonable efforts to prevent the need for placement and/or make it possible for the children to return home. The magistrate concluded a change of legal custody to the Smith was in the children's best interests. Mother filed timely objections to the magistrate's decisions. Via Judgment Entries filed August 17, 2018, the trial court approved and adopted the magistrate's decisions.

**{¶10}** It is from these judgment entries Mother appeals. Mother raises identical assignments of error in both appeals:

I. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DID NOT GRANT APPELLANT'S MOTION FOR A CONTINUANCE.

II. THE JUDGMENT OF THE TRIAL COURT THAT THE MINOR CHILD CANNOT AND SHOULD NOT BE PLACED WITH APPELLANT AT THIS TIME OR WITHIN A REASONABLE PERIOD OF TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

III. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTEREST OF THE MINOR CHILD WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

**{¶11}** These cases come to us on the expedited calendar and shall be considered in compliance with App. R. 11.2(C).

Stark App. No. 2018CA00137
Stark App. No. 2018CA00138
I

{¶12} In her first assignment of error, Mother contends the trial court abused its discretion in failing to grant a continuance of the change of custody hearing.

{¶13} The decision to grant or deny a motion to continue is entrusted to the broad discretion of the trial court. *Hartt v. Munobe,* 67 Ohio St.3d 3, 9, 615 N.E.2d 617 (1993). Ordinarily, a reviewing court analyzes a denial of a continuance in terms of whether the court has abused its discretion. *Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964); *State v. Wheat,* 5th Dist. Licking App. No.2003–CA–00057, 2004–Ohio–2088. An abuse of discretion connotes more than a mere error in law or judgment; it implies an arbitrary, unreasonable, or unconscionable attitude on the part of the trial court. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶14} In evaluating whether the trial court has abused its discretion in denying a continuance, appellate courts apply a balancing test which takes into account a variety of competing considerations, including the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; and whether the defendant contributed to the circumstance which gives rise to the request for a continuance. *State v. Unger,* 67 Ohio St.2d 65, 67–68, 423 N.E.2d 1078 (1981).

{¶15} Counsel for Mother requested the continuance because Mother had traveled to Michigan and was unable to return to Ohio in time for the hearing. Counsel stated he had met with Mother a couple of weeks earlier to prepare for the hearing, acknowledging

Mother was aware of the hearing date. Counsel for SCJFS advised the trial court Mother met with SCJFS caseworker Paige Horn the previous morning, June 13, 2018, and Horn reminded Mother about the hearing the following day.  Mother made a conscious decision to leave the state the day before the scheduled hearing.

{¶16} Based upon the information presented to the trial court, the absence of sufficient grounds for the continuance, and the children's need for permanency, we find the trial court did not abuse its discretion in denying Mother's request for a continuance.

{¶17} Mother's first assignment of error is overruled.

Stark App. No. 2018CA00137
Stark App. No. 2018CA00138
II, III

{¶18} In her second assignment of error, Mother submits the trial court's finding the children could not or should not be placed with her within a reasonable time was against the manifest weight and sufficiency of the evidence.   In her third assignment of error, Mother asserts the trial court's finding the best interests of the children would be served by granting permanent custody to SCJFS was against the manifest weight and sufficiency of the evidence.

{¶19} We begin by noting the trial court did not grant, nor did SCJFS seek, permanent custody of the children.  This matter involves a change in legal custody.  Unlike permanent custody, legal custody does not divest parents of residual parental rights, privileges, and responsibilities. *In re C.R.,* 108 Ohio St.3d 369, 2006–Ohio–1191, 843 N.E.2d 1188 at ¶ 17.

{¶20} In Ohio, the statutorily permissible dispositional alternatives in a dependency, neglect, or abuse case are enumerated in R.C. 2151.353(A). *See, e.g., In re*

*S.Y.,* 5th Dist. Tusc. No. 2011 AP04 0018, 2011–Ohio–4621, ¶ 31.  R.C. 2151.353(A)(3) specifically provides:

> If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition: * * * Award legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings. * * *.

**{¶21}** A trial court "must have wide latitude in considering all the evidence" and a custody decision will not be reversed absent an abuse of discretion. *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 1997–Ohio–260. As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent, and credible evidence upon which the finder of fact could base its judgment. *Cross Truck Equip. Co. v. The Joseph A. Jeffries Co.,* 5th Dist. No. CA5758, 1982 WL 2911 (Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

**{¶22}** Unlike a permanent custody proceeding where a juvenile court's standard of review is by clear and convincing evidence, the standard of review in legal custody proceedings is a preponderance of the evidence. *In re S.D.,* 5th Dist. Stark Nos.

2013CA0081 & 2013CA0082, 2013–Ohio–5752, ¶ 32 (Citations omitted).

**{¶23}** In this type of dispositional hearing, the focus is on the best interest of the child. *In re C.R.,* 108 Ohio St.3d 369, 2006–Ohio–1191, 843 N.E.2d 1188; *In re P.S.,* 5th Dist. No. 2012CA00007, 2012–Ohio–3431. Despite the differences between a disposition of permanent custody and legal custody, some Ohio courts have recognized "the statutory best interest test designed for the permanent custody situation may provide some 'guidance' for trial courts making legal custody decisions." *In re A.F.,* 9th Dist. No. 24317, 2009–Ohio–333 at ¶ 7, citing *In re T.A.,* 9th Dist. No. 22954, 2006–Ohio–4468 at ¶ 17. The test would thus encompass a consideration of factors including, but not limited to: (1) the child's interaction with his or her parents, siblings, relatives, foster caregivers, and others, (2) the child's wishes, which may be expressed by the guardian ad litem, (3) the child's custodial history, and (4) the need for a legally secure permanent placement. *See* R.C. 2151.414(D)(1).

**{¶24}** As set forth in our statement of the case and facts, supra, Mother had made little progress on her case plan. The case was opened in November, 2017, at which time Mother was ordered to complete a parenting evaluation at Northeast Ohio Behavioral Health. Mother did not complete her parenting evaluation until May 8, 2018. Thereafter, Mother delayed setting up her first appointment with Dr. Thomas. The appointment was finally scheduled for June 19, 2018, five days after the hearing. Mother repeatedly tested positive for marijuana and alcohol. Mother was living with a violent man whom the children feared. Mother went lengthy periods of time without visiting the children. Mother could not divide her attention between the children, often ignoring them and paying attention to her newborn.

**{¶25}** The children are currently placed with the Smiths and are doing well in their care. Prior to placement with the Smiths, Child 2 was having difficulty in school. He would often get in trouble and have to be removed from his classroom. Child 2's school attendance and behavior have improved substantially since being placed with the Smiths. Likewise, Child 1 was having behavior problems at school and repeatedly had to be removed from her classroom. She has made "phenomenal progress" since being placed with the Smiths. Both children are also doing well academically and are involved in extra-curricular activities. Horn opined it was in the best interest of the children to place them in the legal custody of the Smiths. The guardian ad litem concurred with the determination.

**{¶26}** Based upon the foregoing, we find the trial court's decision is supported by a preponderance of the evidence, and a change of legal custody was in the best interest of Child 1 and Child 2.

**{¶27}** Mother's second and third assignments of error are overruled.

**{¶28}** The judgment of the Stark County Court of Common Pleas, Family Court Division, is affirmed.

By: Hoffman, P.J.

Wise, John, J.  and

Delaney, J. concur